```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------   X
MICHELLE BECKLES,                                            :
                                                             :
                              Plaintiff,                     :     MEMORANDUM DECISION AND
                                                             :     ORDER
          -against-                                          :
                                                             :
NEW YORK CITY DEPARTMENT OF                                  :     23-cv-8663 (BMC)
EDUCATION,                                                   :
                                                             :
                              Defendant.                     :
                                                             :
----------------------------------------------------------   X
```

**COGAN**, District Judge.

Plaintiff, a devout Christian, brings this action for religious discrimination under Title VII. She alleges defendant, her employer, discriminated against her by refusing to accommodate her sincere religious objections to the COVID-19 vaccine. Defendant has moved for summary judgment, and its motion is granted. The summary judgment record makes undeniable, as a matter of law, that her proposed accommodations would have imposed an undue hardship on defendant.

## BACKGROUND

Plaintiff Michelle Beckles is a Christian who, by virtue of her faith, opposes vaccination. Defendant New York City Department of Education (the "DOE") is a municipal entity that operates New York City's public schools. Beckles worked as a special-education teacher in the City's public school system from September 8, 2005, to February 11, 2022. She worked with students who are on the "autism spectrum, have Asperger's, are blind, are non-ambulatory, or bedridden, are unable to write on their own (including having to hold and guide student hands) and are prone to seizures." On a typical day, she was responsible for bringing her students to

their classrooms, managing their behavior in class, and providing tailored instruction to them on topics with which they struggled.

In August 2021, the president of Beckles' union informed its members that "the mayor announced that the city is mandating the COVID-19 vaccine for all employees of the Department of Education as part of a public health intervention" and that "employees must have proof of the first shot of the vaccine by Sept. 27." Three weeks later, Beckles received another email from the president reaffirming that the vaccine policy would take effect on September 27th and outlining the leave options available to employees who declined to comply. Separately, the mayor and the chair of the City's health department issued an order "requiring COVID-19 vaccination for DOE employees, contractors, and others who work in-person in a DOE school setting or DOE building."

A week prior to the school policy's effective date, Beckles requested a religious exemption with the DOE, which was immediately denied. The date the policy went into effect, Beckles emailed her union inquiring about the appeal process. The union informed her that she was unable to appeal the rejection but that she was allowed to file a new exemption request with new documentation. Beckles again filed a request, and her request was again denied. The DOE placed her on a leave of absence without pay in early October, and then terminated her on February 11, 2022, one day before the City's vaccine order was rescinded.

Beckles timely filed this action within 90 days of receiving her right-to-sue letter from the Equal Employment Opportunity Commission. The operative amended complaint asserts three religious discrimination claims against the DOE: one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 200e et seq.; one under New York State Human Rights Law § 296, et seq.; and one under New York City Human Rights Law § 8-101, et seq. Beckles has since

withdrawn the state and local law claims, leaving only the Title VII claim. After the close of discovery, the DOE moved for summary judgment.

## DISCUSSION

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Ravenell v. Avis Budget Grp., Inc., No. 08-cv-2113, 2014 WL 1330914, at *1 (E.D.N.Y. March 31, 2014) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)).

Title VII failure-to-accommodate claims proceed in two steps. First, an employee must show that she "(1) . . . held a bona fide religious belief conflicting with an employment requirement; (2) . . . informed [her] employer[] of this belief; and (3) [was] disciplined for failure to comply with the conflicting employment requirement." Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001). Then, the burden shifts to the employer to show it could not accommodate the employee's religious belief without suffering an "undue hardship." Groff v. DeJoy, 600 U.S. 447, 454 (2023) (quoting 42 U.S.C. § 2000e(j)).

An undue hardship exists when "the accommodation would result in substantial increased cost in relation to the conduct of [an employer's] particular business." Id. Courts must apply "th[is] test in a manner that takes into account all relevant factors in the case at hand, including

3

the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." Beickert v. N.Y.C. Dep't of Educ., No. 22-cv-5265, 2023 WL 6214236, at *3 (E.D.N.Y. Sept. 25, 2023). A reasonable accommodation "can never involve the elimination of an essential function of a job." Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003)). By extension, "[h]ir[ing] another employee to cover plaintiff's in-person duties" qualifies as an undue hardship when those duties are essential to the plaintiff's position. Wilson v. Mid-Hudson Forensic Psychiatric Ctr., No. 23-cv-8911, 2025 WL 1295655, *8 (S.D.N.Y. May 5, 2025).

Because the DOE agrees that Beckles' sincere religious beliefs conflicted with its vaccine policy, that she informed the DOE of her beliefs, and that the DOE fired her for failing to vaccinate, its motion turns on undue hardship. Beckles offers two accommodations that she claims would have been reasonable: the school could have allowed her to work in-person while unvaccinated, or the school could have allowed her to teach remotely, like it did during the first year of the pandemic. Both accommodations, however, would have imposed substantial costs on the DOE.

The Second Circuit has already summarily rejected Beckles' first proposed accommodation. In an unpublished order, a panel held that when an employer "could not have granted [its employee's] religious-exemption request without violating the [City's vaccine order], exposing itself to potential penalties," the employer "suffer[s] an undue hardship. D'Cunha v. Northwell Health Sys., No. 23-476-cv, 2023 WL 7986441, *3 (2d Cir. Nov. 17, 2023); cf. Bey v. City of New York, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be used to require employers to depart from binding federal regulations."). Forcing an employer to

4

violate state law is "both 'excessive' and 'unjustifiable.'" D'Cunha, 2023 WL 7986441, at *3 (quoting Groff, 600 U.S. at 469).

Beckles' second proposed accommodation, that she be allowed to work remotely, presents a somewhat closer call – it hasn't been expressly rejected by a controlling authority – but ends up in the same place as the first. Preliminarily, Beckles did not in fact request to work remotely. Her first exemption request merely sought permission to "wear[] a face mask, social distanc[e] from coworkers or non-employees, test[], or work[] a modified shift," and her second request did not raise any new potential accommodations. She cannot now blame the DOE for failing to provide something she never requested. See Greenberg v. Visiting Nurse Servs. in Westchester, Inc., No. 23-cv-4252, 2024 WL 4252550, at *9 (S.D.N.Y. Sept. 19, 2024).

Yet even if Beckles had asked to work remotely, Title VII would not obligate the DOE to comply. The undisputed summary-judgment record overflows with evidence that Beckles, as a special-education teacher, needed to work in person to function effectively. She could not guide her students to class or ensure they are paying attention to lessons, for instance, from a Zoom call. These were not ordinary students; they needed a level of hands-on attention that regular students generally do not. Accommodating her, then, would have required the DOE to hire a substitute to perform much of her job for her, or in other words, "[h]ire another employee to cover plaintiff's" significant "in-person duties."[1] Mid-Hudson Forensic Psychiatric Ctr., 2025 WL 1295655, at *8.

Unable to contest that a substitute would need to functionally replace her, Beckles resorts to faulting the DOE for failing to provide a "computation of substitute teacher cost for a special

---

[1] Beckles cites several cases which found that determining the "essential functions" of a plaintiff's job was a question for the jury. See, e.g., Tafolla v. Heilig, 80 F.4th 111 (2d Cir. 2023). But here Beckles admits to certain essential functions of her job – e.g., monitoring her students' in-class behavior – that could not be performed remotely.

5

education teacher having comparable qualifications, licenses and experience as" her. This argument misunderstands the DOE's burden and the scope of the Court's review. The DOE need not provide a detailed financial forecast to show certain measures are impractical and costly. A court can determine that an accommodation would be "excessive" or "unjustifiable" based only on the nature of the accommodation relative to the employer's business. Groff, 600 U.S. at 469.

Moreover, the reviewing court does not limit its view to the price of accommodating the plaintiff and the plaintiff alone. It looks to "the overall context of any employer's business," which includes any follow-on effects of the accommodation. Id. at 468. If the DOE allowed Beckles to work remotely, it would have needed to extend the same privilege towards other teachers with genuine religious objections to vaccination. One does not need to run a discounted-cash-flow analysis to understand that this would create a significant financial strain on the public school system.

Beckles also stresses that remote teaching was allowed during the 2020-21 schoolyear, and certain therapists and paraprofessionals were on site to monitor plaintiff's class while she taught remotely. How then, she asks, could it pose an undue burden in 2021-22? The answer is simple. During the 2020-21 schoolyear, both teachers and students attended school remotely, but in 2021-22 they did not. Beckles does not claim it was religious discrimination to transition back to in-person learning; indeed, she pushed the administration to do so. And once the school made the transition, it became burdensome to accommodate remote teaching.[2] Beckles herself admits that "all of [her students] were remote (at home) with the exception of one" during the 2020-21 schoolyear, which would not have been the case during the following schoolyear. It is no

---

[2] Beckles states in her brief, without any citation to the record, that the DOE granted medical exemptions during the 2021-22 schoolyear. Nothing in the parties' Rule 56.1 statements or exhibits supports this conclusory assertion, and the Court will not consider it. See Parke v. Assist Ambulance, No. 23-cv-09066, 2025 WL 513266, at *9 (E.D.N.Y. Feb. 17, 2025).

surprise that courts in this circuit have uniformly rejected similar arguments. See, e.g., Dominguez v. Bd. of Educ., No. 23-cv-2460, 2024 WL 3427217, at *6 (S.D.N.Y. July 16, 2024) ("[T]hat Plaintiff could perform his essential job functions while working remotely during the first phase of the COVID-19 pandemic . . . does not support his assertion that he could continue to perform his essential job functions . . . . given that the District determined the return to in-person was appropriate.").

As a final line of attack, Beckles' opposition brief conjures up a new theory absent from any of her earlier filings. She appeals to certain Americans with Disabilities Act cases to argue that, because the DOE did not engage with her in an "interactive process," it must have denied her exemption request in bad faith. Several procedural grounds bar Beckles from raising this claim now, in opposition to a motion for summary judgment. See, e.g., Fed. R. Civ. P. 8. That aside, her own authority forecloses any possibility of success. It recognizes that "liability for failure to engage in an interactive process depends on a finding that the parties could have discovered and implemented a reasonable accommodation through good faith efforts." Together Emps. v. Mass Gen. Brigham Inc., 573 F. Supp. 3d 412, 442 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022). As previously discussed, any accommodation here would have been unreasonable, so Beckles cannot hold the DOE liable for failing to engage in an interactive process.

## CONCLUSION

For the reasons stated, the DOE's summary judgment motion is granted.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
      August 4, 2025